UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
(ATLANTA DIVISION)

| | |
|---|---|
| KANEMA ACHAMPONG,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

NOW COMES Plaintiff Kanema Achampong, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendant Experian Information Solutions, Inc. ("Experian") and Defendant Equifax Information Services, LLC (collectively, "Defendants"):

## INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendants Experian and Equifax, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

1

**JURISDICTION AND VENUE**

2. This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. §§ 1331. Jurisdiction is also proper pursuant to 15 U.S.C. §1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

**PARTIES**

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the city of Atlanta in Fulton County Georgia.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C.

§ 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. Defendant Equifax is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of *consumer reports*, as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

9. During all time pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in Georgia on a routine and systematic basis.

10. Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

11. During all time pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12. Any violation by Defendants were not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14. Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15. Defendants' credit reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications

4

for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16.  Defendants gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

17.  The information reported by Defendants contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

18.  The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

19.  These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

20.  FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

21. Amount of debt owed is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a CRA creates an impression that the Amount of currently owed debts is higher than it actually is thereby impacting a consumer's credit score.

22. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

23. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

24. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

25. Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as individual account tradelines.

26. Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27. Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendant reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

28. Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

29. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendants from furnishers of account/tradeline information.

30. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Defendants have obtained through their independent efforts or could easily obtain through reasonably available public records.

31. Defendants are on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

32. In or around March 2013, Plaintiff obtained an Auto Loan with US Auto Finance, Account no. 12XXXX (the "Account").

33. Plaintiff filed for Chapter 7 Bankruptcy in March 2020 in the United States Bankruptcy Court for the Northern District of Georgia (Atlanta), case no. 20-65130-bem.

34. There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq*. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

35. Accordingly, Plaintiff received an Order of Discharge, discharging her personal liability on the dischargeable debts on July 6, 2020.

36. Plaintiff filed for bankruptcy to rebuild and improve her credit.

37. After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start."

38. Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendants prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge status.

39. Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

40. For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants are generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

41. Nevertheless, Defendants continued to report one or more accounts inaccurately, with past due payments between the time the bankruptcy petition was filed and when Plaintiff received the discharge, instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

42. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained her Experian, Equifax, and Trans Union consumer credit reports to ensure that her credit account tradelines and bankruptcy were being reported accurately.

43. Plaintiff discovered that Experian reported the Account inaccurately.

44. Experian inaccurately reported the Account as "Voluntarily surrendered" with an owed and past due balance of $15,262 during August 2020. However, the Account was included in Plaintiff's bankruptcy and discharged on July 6, 2020.

45. Experian also inaccurately reported the payment history on the account both during and after Plaintiff received her discharge.

46. Experian did not report that the Account had been discharged in bankruptcy despite reporting the bankruptcy filing in the public records section and reporting other pre-bankruptcy accounts as "Bankruptcy Discharged".

47. Plaintiff also discovered Equifax reported the Account inaccurately.

48. Equifax inaccurately reported the Account with a Balance of $15,262, and a Status of "Charge-Off". The Account was included in Plaintiff's bankruptcy and discharged on July 6, 2020.

49. Equifax did not report that the Account had been discharged in bankruptcy despite reporting the bankruptcy filing in the public records section and reporting other pre-bankruptcy accounts as "Discharged through Bankruptcy Chapter 7".

50. Upon information and belief, Defendants additionally and/or alternatively were on notice of US Auto Finance's unreliable procedures to

properly update the reporting of pre-Chapter 7 debts upon discharge of a bankruptcy, and may therefore have reported information contradicted by Defendants' own records and independent knowledge of Plaintiff's bankruptcy discharge, in unreasonable reliance on a furnisher.

51. Defendants inaccurately reported that Plaintiff is past due on payments on which she does not owe, thereby damaging her credit scores and credit utilization rate.

52. Defendants inaccurately reported the status of these debts, even though the debts are in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

53. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

54. Upon information and belief, Plaintiff applied for and was denied credit cards with Capital One, Comenity/MPRC, and JPMorgan Chase Bank due to Defendant's inaccurate reporting which was published to Capital One,

Comenity/MPRC, and JPMorgan Chase Bank in their review of Plaintiff's application.

55. Upon information and belief, Plaintiff applied for and was denied loans with Delta Community Credit Union and Wells Fargo due to Defendant's inaccurate reporting which was published to Community Credit Union and Wells Fargo in their review of Plaintiff's application.

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

56. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

57. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

58. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

59. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital

role in assembling and evaluating consumer credit and other consumer information.

60. The FCRA requires consumer reporting agencies, like Defendants, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

61. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy, and discharged by that bankruptcy.

62. Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

63. In this case, the inaccurately reported debts pertain to the US Auto Finance debt that Defendants knew predated Plaintiff's Chapter 7 Bankruptcy and was discharged by Plaintiff's bankruptcy discharge.

64. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

65. Defendants have obtained or has available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

66. Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

67. Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

68. Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

69. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

70. Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

71. Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

72. Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

73. Defendants are also on notice from other account tradelines reported by Defendant that indicate those accounts were included in/discharged in bankruptcy.

74. Defendants are well aware that discharged debts should not be reported as late, past due, or with an outstanding balance after the debt is discharged.

75. Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendants knew or should have known the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

76. Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

77. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness, as Defendant reports the existence of late payments after the filing of the petition on accounts that were included in Plaintiff's Chapter 7 bankruptcy.

78. Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain.

79. Defendants are therefore liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

80. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

Fair Credit Reporting Act Violations

(a) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(d) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 29th day of December 2020,

        **PRICE LAW GROUP, APC**

        By: *s/Jenna Dakroub*
        Jenna Dakroub
        Bar Number: 385021
        **Price Law Group, APC**
        8245 N. 85th Way
        Scottsdale, AZ 85258
        E: jenna@pricelawgroup.com
        Telephone: (818) 600-5513
        Fax: (818) 600-5413
        *Attorney for Plaintiff,*
        *Kanema Achampong*